C. B. Kniskern, Jr., and Douglas D. Felix, both of Miami, Fla., for appellant.

Abbott M. Sellers and George A. Stinson, Sp. Assts. to Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., Herbert S. Phillips, U. S. Atty., of Tampa, Fla., and Ernest L. Duhaime, Asst. U. S. Atty., of Miami, Fla., for appellee.

Before HUTCHESON, SIBLEY and WALLER, Circuit Judges.

**MONMOUTH PLUMBING SUPPLY CO., Inc. v. UNITED STATES.**

No. 12384.

United States Court of Appeals Fifth Circuit.

Nov. 12, 1948.

HUTCHESON, Circuit Judge.

The suit was to recover taxes overpaid. The claim was: that in computing its undistributed profits for surtax purposes, plaintiff was entitled to a credit under Sec. 26(c) (1)[1] of the Revenue Act of 1936, 26 U.S.C.A.Int. Rev.Acts, p. 836, by reason of an extension agreement[2] which it made with its bondholders prior to May 1, 1936, prohibiting it from paying dividends during the taxable year in excess of a certain

---

[1] "(c) Contracts Restricting Payment of Dividends.

"(1) Prohibition on payment of dividends. An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. * * *"

[2] This contract, among other things provided:

"The company agrees not to pay any dividends on the common stock until after the reserve fund of $11,000.00 has been created annually and that amount of bonds shall have been paid and all interest on bonds paid up to date, and then for not a greater rate than $2.00 per share until all the bonds outstanding have been paid and retired."

amount; and that the credit had been disallowed.

The defense was that the restrictive provisions of the contract were waived by the plaintiff's failure to establish a reserve fund annually and by the bondholders' acquiescence in such lack of performance on plaintiff's part.

The cause was submitted on a stipulation of facts.[3]

The district judge found that the bondholders had not in any manner waived their rights under the contract. He found further, though, "that the contract was breached by the corporation in that the plaintiff (a) did not set up a reserve fund, (b) retired only $3000.00 in bonds during the fiscal year of January 31, 1937—January 31, 1938, and (c) on January 28, 1938, declared a dividend of $2.00 per share." On the basis of this finding, he held: "Plaintiff, I think, having breached the contract, is not in position to take advantage of the provisions of a breached contract when it seeks remedy under said Section 26(c) (1)." So holding, he gave judgment for the defendant.

Plaintiff is here insisting that the foundation of his right is written plain in the statute; that the agreement was made in precise accordance with the statute; and that the so-called breach of its contract, of which the trial court made so much, is wholly without significance here.

We agree with appellant. The written contract executed in this case is precisely the kind of contract with which the statute deals. Appellant could not "without violating a provision of a written contract * * *," expressly dealing "with the payment of dividends," have distributed the difference between the $13,658 paid in dividends and its adjusted net income of $32,546.92, on account of which the taxes sued for were assessed.

The government, in face of the fact that the district judge found against it on its defense of waiver and based his judgment solely upon the theory of breach, argues the case as though waiver had been established. This will not do. A breach of a provision of a contract is the antithesis of a waiver of its terms. If there was a waiver, there was no breach; if a breach, no waiver. Unless changed by agreement or abandoned by waiver of the bondholders for whose benefit it was made, the agreement stands as a barrier to paying out the profits on account of which the tax in question was assessed. The judgment is reversed and the cause is remanded for further and not inconsistent proceedings.

---

[3] The provisions important here are:

(1) In 1925, the plaintiff issued $100,000 of mortgage bonds, maturity date, April, 1935.

(2) As of that date, bonds in the amount of $55,000 were outstanding and unpaid.

(3) Prior to Oct. 15, 1935, plaintiff entered into a written extension agreement with the holders of the bonds containing the provision set out in Note 2, above.

(4) During the fiscal year ending Jan. 31, 1938, the only authorized or outstanding stock of plaintiff was common stock.

(5) Plaintiff did not in any year set up on its books the $11,000 reserve fund mentioned in the written extension agreement above referred to.

(6) In the fiscal year, 1936, it retired none of its bonds and paid no dividend on its common stock; during the fiscal year 1937, it retired $22,500 of its bonds and paid $2.00 per share on its common stock; during the fiscal year 1938 it retired $3000 of its bonds and declared and paid a dividend of $2.00 per share on its common stock, amounting to $13,658.00.

(7) During the fiscal years after 1938 plaintiff retired the outstanding balance of the bonds as follows:

| Fiscal Year Ended Jan. 31 | Amount Retired |
| --- | --- |
| 1939 | $ 3,000.00 |
| 1940 | 16,500.00 |
| 1941 | none |
| 1942 | 10,000.00 |

(8) During the fiscal year ending Jan., 1938, plaintiff's president, secretary, and treasurer owned approximately 40% of the outstanding bonds and 40% of the common stock.

(9) At all times during the period covered by the agreement interest on the bonds was paid as it became due.